MARTIN MILLING CO., A CORPORATION, APPELLANT, V.
LARRY EVELYN, APPELLEE.

136 N. W. 2d 177

Filed July 9, 1965.   No. 35913.

Wright, Simmons & Hancock, for appellant.

Marvin L. Holscher, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

SPENCER, J.

Involved herein is the question whether plaintiff can recover advances made to the defendant in excess of commissions earned in the absence of a specific agreement for such recovery.

Defendant, Larry Evelyn, entered the employ of plaintiff, Martin Milling Co., as a salesman on a commisison basis in September 1958. He was so employed until approximately April 1, 1962, when plaintiff, without notice to the defendant, went out of business, thus terminating his employment.

Previous to April 1, 1961, defendant had a drawing account of $162.50 per week. At that time, he had received advancements of $8,540.98 in excess of his commissions. About April 1, 1961, the parties entered into a new agreement, exhibit 2, whereby the advancements were to be reduced to $75 per week, and the plaintiff agreed, among other things, as follows: "At the end of this year, we will figure up your commission, and will

deduct from this what we have advanced during the year. If your commissions exceed the amount advanced, we will forward to you an amount equal to the amount of your second mortgage (if there is that much coming to you), and if there is anything over that amount we will send half of it to you, applying the other half to your account with this company."

Between April 1, 1961, and April 1, 1962, the defendant earned commissions of $6,986.04, and received advancements of $3,625, so that his commissions exceeded his advancements by $3,361.04. The parties stipulated that defendant's second mortgage, referred to in exhibit 2, was in the amount of $3,500.

On January 27, 1962, the defendant signed the following form, exhibit 3, which had been sent to him by the plaintiff's auditors:

"No. 10

"Dear Sirs:

"According to our records, the balance receivable from you as of 1/27/62 was $6,611.62. If this agrees with your records, please sign this confirmation form in the space provided below; if it does not agree with your records, do not sign below but explain and sign on the reverse side. In either case, please return this form directly to our auditors, Haskins & Sell, 912 First National Bank Building, Omaha 2, Nebraska, for their use in connection with an examination of our accounts. A stamped and addressed envelope is enclosed for your reply.

"Martin Milling Co.
"SIGN HERE if above is correct. (if incorrect, do not sign here but explain and sign on reverse side.)
"Larry Evelyn (Signed)
"By Larry Evelyn (Signed)

"(Larry Evelyn         )
  Box 313

(Gering, Nebraska ) THIS IS NOT A RE-
QUEST FOR PAYMENT"

Plaintiff in this action sued for the balance due, after applying the $3,361.04, on advancements of $5,643.14. The defendant cross-petitioned for the $3,361.04. The trial court entered judgment for defendant for $3,361.04 with interest. We affirm that judgment.

It is plaintiff's position that exhibit 3 is an account stated between the parties. We do not so construe it. It is merely a statement to plaintiff's auditors that defendant had received advancements of $6,611.62 in excess of commissions, and nothing more. To constitute an account stated, there must be a showing that the parties had reached an understanding as to the nature of the transaction between them, and that they understood that a final adjustment of the respective demands of each upon the other was being made.

As we said in Bingaman v. Huntley, 139 Neb. 819, 299 N. W. 180: "In creating an account stated, as in making any other agreement, the minds of the parties thereto must meet and understand that a final adjustment of the respective demands of each upon the other is being made."

The parties herein had a specific agreement as indicated by the quotation from exhibit 2 above. This agreement provided that the plaintiff was to forward to the defendant any earnings above the advancements at the end of the year up to the amount of defendant's second mortgage, which was $3,500. The excess earnings on April 1, 1962, were only $3,361.04, so they should have been paid to the defendant. If the earnings had exceeded $3,500, only one-half of the excess above $3,500 was to be applied on advancements.

Plaintiff puts considerable reliance on the fact that the agreement, which was made about April 1, 1961, but not confirmed by letter until June 5, 1961, contains the clause, "At the end of this year," and insists that in any event it would only be operative until January 1, 1962.

We do not so construe it. We construe the agreement to provide that periodically the parties would settle on the basis outlined until such time as a future agreement was made. It is no fault of the defendant that the plaintiff saw fit to discontinue its business and to terminate the defendant's employment.

While this is a case of first impression in Nebraska, the law is well settled that in the absence of an express or implied agreement or promise to repay advancements in excess of commissions earned, the employer has no remedy against the employee even though the contract may provide for periodic settlements. The sole source of reimbursement is the commissions earned and no personal liability rests on the employee to repay the advancements made. See, 56 C. J. S., Master and Servant, § 120, p. 562; Annotations, 57 A. L. R. 33, 165 A. L. R. 1367.

We hold that in the absence of an agreement to the contrary the making of advancements to a salesman against future commissions creates no legal obligation on his part to repay them.

For the reasons given, the judgment of the trial court is correct and is affirmed.

AFFIRMED.